Counsel, you may proceed. Thank you. May it please the Court, Nancy Bergeson appearing for Mr. Casey. Ms. Bergeson, there's an appeal and a cross-appeal in this case, so please discuss both during your opening. I will, Your Honor. During your presentation. You have 20 minutes to use any way you wish, but be sure and take care of that rather than wait for the rebuttal. Thank you. I would like to reserve a few minutes for rebuttal. You may do so. Thank you. Your Honors, this appeal brings to the Court two areas, general areas of inquiry. First, whether or not, by affirmative argument, that is our direct appeal, whether or not Mr. Casey should be resentenced. And then, secondly, by response to the government's cross-appeal, whether or not the trial court decision that you can't exist should be reversed. To the first issue, let me just start by emphasizing that this is an unusual case in that there are only Counsel, I think I misunderstood your second issue. Did you say that the trial court ordered him to forfeit something that didn't exist? The trial court refused to order forfeiture of a nonexistent amount of money. And our position, of course, is that that is correct. All right. Thank you. Getting to the heart of the matter, didn't Mr. Casey admit the sale of 1,000 tablets when he, through Counsel, agreed with the proffer made in open court? Your Honor, he did not because Blakely requires far more than that. If he did anything, it was a mere acquiescence in the government's recitation of a lot of facts. He said he had no significant disagreement with the government's statement of the facts. That's true. He said he had no substantial disagreement. But Blakely requires either a jury trial on a fact that is going to increase maximum penalty or an explicit admission that amounts to a waiver of that jury trial. And why don't we have that here? Because a waiver requires an acknowledgment in the context of giving up that right. And what I think importantly, the initial response to this issue when it arose, and it was sort of a minefield here trying to negotiate Blakely, this is an unusual situation, not likely to repeat itself. But when, because Mr. Casey pled pre-Blakely. Then when Blakely came down and the probation office looked at the issue about whether or not he made an admission, because he certainly didn't have a jury trial on it, the probation office concluded that, in fact, he did not. The probation office looked at this colloquy and found insufficient evidence of an admission that amounted essentially to a waiver under Blakely. And importantly, despite the government's arguments that this did amount to an admission and a consideration of other extraneous material, the trial court itself initially made the correct conclusion that it wasn't sufficient. And I want to call the Court's attention to the very specific language of the judge as she fielded the government's argument that Mr. Casey had made an admission. She said, inasmuch as the plea colloquy was conducted on April 7th, long before the Court had any idea that there would be Blakely concerns, it was not intended to elicit the kinds of admissions that the government asserts were, in fact, received. I cannot say that the defendant made any explicit admission, and the defendant never authorized me to make such a finding or to draw that conclusion by waiving a jury or explicitly being asked to consider that point. The trial judge was right on the money. Now, the subsequent shift, in part, I think is explained by the dramatic shift in the landscape. We went through, in this case, we went through argument about whether or not a sentencing jury should be empaneled. The Court ultimately determined it should not because of a jeopardy that Mr. Casey had pled and jeopardy attached, so there was no sentencing jury empaneled. And then the decision was made by the Court that it could consider a host of extraneous material to determine that Mr. Blakely should be or Mr. Casey should be held accountable for that amount of drugs. The argument is primarily based on Blakely. Blakely requires a waiver, a jury trial or a waiver. But it's also supported by Shepard, the United States Supreme Court case of Shepard. And I have discussed that in my brief. Shepard is a little different situation and doesn't require as strict a standard as Blakely does. But it nevertheless requires an explicit admission or the defendant's assent to judicial fact-finding. So even under Shepard, this was not sufficient to constitute an admission. The primary problem with Shepard and with Blakely is that we conduct this search, this searching inquiry into extraneous matters, like police reports, like notes, that were not given to the Court as an evidentiary matter. And so it's our very strong position here that this was not an admission sufficient to establish drug amount. And there was a very serious consequence. This offense level should have been 12. Instead, it was determined to be 26, a shift literally of four, probably four years. So the consequence was significant for Mr. Casey. Now, if the Court agrees, then the issue is one of ex post facto on remand. I think there should be no question that the case should be sent back for resentencing and the government concedes so. But — But are you familiar with the case of United States v. Dupas? Yes. Yes. How do you distinguish your ex post facto argument from that case? Your Honor, I distinguish it because Dupas or Dupas — Or Dupas is probably correct. — essentially involved a due process argument. It really was a different issue. And it does not control. It addresses, just like in Texas v. Cobb, if there is a different constitutional argument that is addressed, then it is not controlling on this Court. And Dupas is very much centered on the due process issue of notice and fair warning. This is an ex post facto issue, clear and simple. Ex post facto is a concept that has been applied to the federal sentencing guidelines. Miller v. Florida was the original case involving a Florida sentencing guideline scheme. And the Supreme Court said, absolutely, the ex post facto clause applies. United States v. Sweden was the Ninth Circuit decision that incorporated Miller v. Florida into that analysis and applied it here in the Ninth Circuit to the federal sentencing guidelines. This is a — it's a situation that has never occurred before. What happened in Booker is just novel to understate it. It is a circumstance, though, that can be looked at as a legislative change. In effect, what Justice Breyer did in the remedial opinion was to look at what Congress likely intended and essentially incorporate a savings clause in the Sentencing Reform Act that if one day the Sixth Amendment were held to be applicable to the federal sentencing guidelines, then those mandatory provisions would be excised, would be redacted, and the scheme would become advisory. So it's really a legislative — it's a determination of what the legislature intended and what the legislature intended to read into the statute. So it is an ex post facto argument based on legislative action. And it is an issue of first impression. It has not been addressed, to my knowledge, by — by any court strictly in that — that context. Roberts. Counsel, I think we understand your argument on that issue. You might want to speak to the forfeiture issue, the cross-appeal. Thank you, Your Honor. I will. The question here is whether or not the government can seek forfeiture of $7,000 that was nonexistent. This is not $7,000 that was in a bank account. This was not $7,000 that was found in Mr. Casey's pocket. This is $7,000 that simply does not exist. Now, isn't our law that this — that the court is not limited to current assets and that a money judgment is permitted as an impersonum liability? This is not like RICO. This is a different statute. Your Honor, this is a different statute, and that's exactly the place the court needs to start, is with the statute. It is — the issue is governed by 21 U.S.C. Section 853. And under that statute — You have one interpretation of 853P, but you neglect to talk about 853O, where it says the statute is to be liberally construed to effectuate its remedial purposes, which was, as I read the purpose, if you don't have the actual $7,000 in hand, you can substitute something else. In terms of the liberal construction, it should be, but it can't — but we can't read words into it. We can't read meaning or words into a statute that does not exist. And I — just as an aside, this court in Rapinski actually cautioned against true liberal construction, despite that provision, because, and I think it was at footnote 5, that given the punitive nature of this law, we must be cautious about construing it liberally. So I think that there is — there's a balance there that we need to be mindful of. But in a — what 853 does is provide for the forfeiture of assets in subsection A, property that constitutes proceeds of the crime or property that's used to commit the crime or to facilitate the commission of the crime. That's direct asset. Now, if, in fact, that asset cannot be located, then the substitute asset provision kicks in. So you either have an asset that you can put your hands on, it's property, and property is defined in subsection B as being real property, it's land, or it is a tangible or intangible personal — a piece of personal property that includes rights, privileges, interests, claims, and securities. Well, if there is no money presently, there is no property. There's no property. Let's show — and substitute property. But that's property that presently exists. That is substitute property that you can put your hands on. There is no provision in 853 for a money judgment that doesn't relate to some specific underlying asset. Substitute property, the whole reason that this subsection was enacted by Congress as part of the Sentencing Reform Act, I think, in 1986, was because Congress did not want mobsters, high-level drug dealers to be able to secrete assets, to funnel it somewhere so that the government couldn't get a hold of those assets, those ill-gotten gains. So they enacted the substitute assets provision. Okay, if you can't find the ill-gotten gain, then you can go to something of equal value. But that something of equal value has to exist. It has to be property. We don't change the nature of the definition of property because we simply want to have a judgment against a client in perpetuity. So what the government is doing here is confusing the notion of after-discovered subsequently-located property with after-acquired property. And that's a crucial distinction. So the problem I have with that analysis, Counsel, is that it would provide a remarkable incentive for any defendant under these circumstances just to get rid of the cash or whatever it was that is the subject of forfeiture. But those defendants who get rid of cash have to do it somewhere. And Rule 32.2 specifically provides a mechanism to address your concern. It provides that on the government's motion, this is 32.2 subsection E, on the government's motion, the court may, and this is at any time, specifically the words in the statute or the rule, this is the rule of criminal procedure, at any time, order, enter an order of forfeiture or amend an existing one to include property that is either existing, it's been located and identified as proceeds, or it's substitute property under 853, specifically in court, or an existing statute. The language is, it's substitute property that qualifies for forfeiture under an applicable statute, here 853. So if you have the gold bars that are buried, and you eventually discover them, then the government can come to court and get an order at any time. If you have — Even though the bars are not in the possession of the defendant. Correct. Or anybody controlled by the defendant. The government certainly needs to show the nexus. And you have to establish that that's an asset of the defendant. It doesn't have to be traceable to the original proceeds of the crime. That's what substitute property is. But the defendant gives the gold bars to his wife. Then the whole question arises about whether or not this is an interested third person. But chances are it would not be. It would be a fraudulent transfer. And so the court would be engaged in that inquiry. If a third person asserted some interest in that, then the court would need to look at that issue. But here's the — I think I'm going to — I have three minutes, I think. You may do so, counsel. Thank you. That's fine. We'll reserve them for you. We'll hear from the government. Good morning, Your Honors. Jennifer Martin, appearing on behalf of the United States. And I'd like to turn first to the issues that counsel was addressing, those of forfeiture. The district court erred in refusing to impose the forfeiture on the basis of her understanding that she lacked authority to do so in the context of the record where there was no asset to attach. And this was an error for three reasons. First, under the statutory provisions, forfeiture is mandatory. Second, the duty to impose the judgment is a separate duty from the court's continuing authority to supervise the collection of that judgment. Congress anticipated that drug dealers would spend their profits, that they would hide assets, and the framework of the statute provides for the collection of the or spend their assets. Where is that shown in the record? Where is it shown that Congress intended forfeiture statute to apply to defendants without any current assets? Your Honor, what we look to is the language of the statute itself. And 853A provides that forfeiture of the proceeds is mandatory. 853C codifies the relation back doctrine, which recognized that the government's interest attaches at the time the offense is committed. That's when the government's interest attaches to that asset. That's when it becomes the government's. It is perfected at best once the conviction occurs. But the government's interest dates back to the offense. That's where it's codified in the statute. The statute goes on to provide for the satisfaction of the judgment contemplated in subsection A by noting in subsection L that the court has jurisdiction over the assets located by providing in subsection M that after a judgment of forfeiture is entered, after the judgment is entered, then the government has the ability to conduct depositions, to conduct discovery, to identify and to locate those assets. The congressional language in the statute itself is plain and unambiguous in this regard. It contemplated that the government would need to find those assets that the drug dealers had hidden or dispersed. Then, as the Court pointed out, subsection O requires liberal construction to affect the remedial purpose of this statute, an unusual provision in a criminal statute. And, of course, subsection P authorizes the forfeiture of substitute assets. The third — We have no Ninth Circuit case, do we? The only case my chambers could find is the Seventh Circuit case, which does permit it. But we have nothing in the Ninth Circuit, or do we? I'm sorry. Which permits the allowing the forfeiture of nonexistent — I mean, prescribing the forfeiture of nonexistent assets. Your Honor, I think this Court has, in a number of cases, recognized the validity of proceeds judgments. While there hasn't been a specific analysis on the point, there are a number of decisions that recognize the validity of these. I think the Court, in its recent decision in United States v. Nava, conducted a review of how the statute operates. Then, in several cases, three cases that I've noted in the brief, the Court recognized the validity of dollar-based judgments in United States v. Boulware, in United States v. Chavez, and in United States v. Lester. The Court may not have used the term money judgment, but it certainly recognized the validity of imposing a judgment and then looking to satisfy it at a later time. The third reason that the Court erred in failing to impose a criminal forfeiture judgment is that the district court's reasoning that it didn't have the authority to impose a judgment if the court, from the record, couldn't determine whether there would be assets to later satisfy that judgment, is that it treats similarly situated drug defendants differently based upon whether or not some of them have spent their money on wine, women, or song, buried gold bars in the basement, or saved it so that the government can find it. There is no rational basis not to impose the amount of the proceeds that were earned by the defendants that the court can determine, and in this case, there was no dispute. The defendant received the $7,000 for the drugs that he sent. The government's money attached when the defendant received the money that he intended to use to send the drugs, of which he admitted he later, in fact, sent. In addition to the statutory provisions, of course, as the Court earlier noted too, there are, in the Federal Rules of Criminal Procedure, rules for the court to determine the amount of the money judgment, setting out the procedure that the district court should follow in setting that amount, and in 32.2b and 32.2e, providing the procedure by which the government can forfeit substituted property that is then discovered in order to satisfy the judgment of forfeiture that was entered by the court based upon the amount of proceeds that the court determined that the defendant received or was foreseeable to the defendant. The Congress, in setting forth this mandatory duty to impose the judgment of forfeiture, recognized that defendants who receive proceeds should be treated equally in terms of receiving a judgment against them. The collection, which is a separate obligation, is dealt with after the judgment, after the liability for the proceeds is imposed by the court. The district court in this case noted that if she were in error, she would certainly respect the Ninth Circuit's decision to the contrary and follow what she determined, what this court would determine would be a mandatory duty. When remanding this case for resentencing, and the government does concede that the case should be remanded for resentencing, this court should direct the district court that it has both the authority and the obligation to impose criminal forfeiture proceeds in the defendant's sentence and should direct the district court to enter an order of forfeiture in the amount of $7,000 in proceeds from the defendant's drug crimes. There is — I'm sorry. Oh. I believe the court earlier referred to a Seventh Circuit case that might be United States v. Ginsburg. Sotomayor, United States v. Baker. United States v. Baker. I would also refer the court to United States v. Ginsburg out of the same circuit, 773 F. 2nd. 798. And United States v. Candelaria Silva, a First Circuit case. Those cases discuss money judgments. Are those cases in your brief, Counsel? Yes, they are, Your Honor. Your Honor, turning to the first part of the government's response to the appellant's position that, in this case, DuPont and Dare control and that the case should be remanded for resentencing to the district court for de novo sentencing, the district court erred both in finding that the sentencing guidelines were mandatory rather than advisory at the time and further used the beyond a reasonable doubt standard of evidence rather than a preponderance of the evidence. And I believe, as Counsel noted earlier at Excerpt of Reference, page 63, when she was discussing the impact of the defendant's plea colloquy, the district court on that same page went on to say, I'm paraphrasing here, if this matter were submitted to a sentencing jury, which was the consideration at the time, there would be evidence from which a sentencing jury could find beyond a reasonable doubt that the defendant had sold the thousand tablets of ecstasy. And the court, in yet another location in the record, referred to the fact that she was using a beyond a reasonable doubt standard in determining evidentiary findings. I believe those are Excerpts of Record 58 and 63. Now, let me be sure I understand. You are saying that the government concedes remand is appropriate, I assume under Amelie. Yes, Your Honor. The government concedes remand is appropriate for resentencing. All right. But you're not conceding on the other issue. Are you? On forfeiture? No, no, no. No, on the admission of the 1,000 tablets. No, Your Honor. The defendant made ample admissions. Although certainly when the case is remanded, the court would be able to hear evidence, which it did not at the previous sentencing from both parties. But certainly it would be the government's position that the defendant made ample admissions. Well, see, that's what confuses me. You're suggesting that that issue was reopened once it's remanded. Is that right? Your Honor, I believe that it would be. I believe that the district court would be able to make new findings of fact, would be able to entertain evidence from both parties, which it was not able to do at the last hearing under DuPont.  Yes, Your Honor. Because you made your argument in your brief that that issue was closed. Your Honor, following the submission of the brief, I did forward to the court a 28-J letter citing both DuPont and DARE. And after review of those cases, it would be the government's position that the case would be remanded to the district court and it would be not a limited remand, but an open remand for new factual findings. Okay. If there are no other questions. Thank you, Counsel. Thank you. Ms. Burgesson, you have some reserved time. And you've earned a remarkable concession, I would say, in Opal Court here, which comes as a surprise to me. Happy habit. All right. Go ahead. Let me go, if I might, go back to the forfeiture issue. Because I think it is a difficult case. It's a matter of first impression. And I don't think that there is anything in the Ninth Circuit or, for that matter, anywhere in the country that is persuasive authority that would authorize what the government is seeking in this case. Now, the government has talked about, and Your Honor has talked about, Ginsburg and Baker out of other circuits. Ginsburg was a case that actually was decided before the substitute asset provision was enacted. So Ginsburg made an effort to address this secretion of assets by mobsters and drug dealers, a natural, logical, understandable conclusion, but preceded the substitute asset provision. So it has very little persuasive authority. And my position is that the cases really don't discuss this issue of the propriety of a monetary judgment, for the most part, because defendants don't raise the issue. There seems to be sort of an acquiescence in the money judgment entry without really taking it on. And in United States v. Croce, which is cited in my brief, there is a good analysis, the only one that I really came across, about why these money judgments may not be authorized. And, in fact, it wasn't the defendant in that case who raised the issue of whether or not a money judgment could be issued. It was the court. The court issued a preliminary order and then thought about it and ultimately issued an opinion saying, you know what, I don't have power to do this. And maybe defendants do this all the time, but they acquiesce in it. And if you look carefully at the statute and the rule, it's really not authorized. So I commend that case to you for analysis because it really does go into a history of forfeiture. It relates more to continuing criminal enterprise issues, but really the analysis is applicable here, which dovetails into the next, I think, blatant argument that I have, which is the government here and the trial court found is really trying to impose a fine. Congress knows how to impose sanctions for various things. For forfeiture, there is an unlawful and ill-gotten gain, and so it enacts statutes. For restitution, there is a loss, and so it enacts statutes. For a fine, it is a punitive measure, and that's what a fine is all about. And the provision for a fine in the forfeiture statute is found at 853 in the last paragraph of subsection A, providing for, in lieu of the forfeiture, basically a fine of double the amount of the loss. So that's really what this was, was a fine. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Browning, D.W. Nelson, O'Scannlain